UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VENEZUELA US SRL,<br>    1201 Lake Robbins Drive<br>    The Woodlands, TX 77380<br>    United States of America<br><br>                              Petitioner,<br><br>       v.<br><br>BOLIVARIAN REPUBLIC OF VENEZUELA,<br>    Ministerio del Poder Popular para Relaciones<br>       Exteriores<br>    Dirección del Servicio Consular Extranjero,<br>       Oficina de Relaciones Consulares<br>    Edificio Anexo a la Torre MRE, piso 1<br>    Avenida Urdaneta - Esquina Carmelitas a Puente<br>       Llaguno<br>    Caracas 1010<br>    Venezuela<br><br>                              Respondent. | Civil Action No. _____ |

**PETITION TO RECOGNIZE AND
ENFORCE A FOREIGN ARBITRAL AWARD**

Petitioner Venezuela US SRL by its undersigned attorneys, states as follows:

**NATURE OF THE ACTION**

1. This is an action to enforce an arbitration award under Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201 *et seq.* ("FAA"), and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 (the "New York Convention" or the "Convention"). Petitioner Venezuela US SRL ("VUS" or "Petitioner") seeks the recognition and enforcement of an arbitration award rendered in its favor against the Bolivarian Republic of Venezuela ("Venezuela" or "Respondent") by the arbitral tribunal

("Tribunal") in *Venezuela US, S.R.L. v. The Bolivarian Republic of Venezuela*, PCA Case No. 2013-34 (the "Arbitration").[1]

2. VUS, a Barbadian registered company, has interests in an oil field in Venezuela. VUS commenced arbitration against Venezuela in March 2013, arguing (*inter alia*) that Venezuela had wrongfully deprived VUS of the dividends it was owed from its oil field investment. *See* Friedman Decl. ¶¶ 5–6. VUS argued that this mistreatment violated the promises that Venezuela made to Barbadian investors in Venezuela, such as VUS, in the Agreement Between the Government of Barbados and the Government of the Republic of Venezuela for the Promotion and Protection of Investments, July 15, 1994, 1984 U.N.T.S. 181 (the "Treaty"). *See* Friedman Decl. ¶¶ 2, 6; Friedman Decl. Ex. D (Treaty).

3. The ensuing Arbitration, in which Venezuela participated fully, lasted close to a decade. The Tribunal issued its Final Award in The Hague, Netherlands, on November 4, 2022. The Final Award ordered Venezuela to pay VUS more than US$ 58.8 million in compensation for Venezuela's breach of the Treaty, along with more than US$ 46.6 million in pre-award interest as well as post-award interest at the rate corresponding to the twelve-month USD LIBOR plus 4%, compounded annually. *See* Friedman Decl. Ex. A (Final Award), ¶¶ 107(1)–107(4). The Final Award also ordered Venezuela to reimburse VUS for 70% of VUS's costs of legal assistance and arbitration costs, for a total of approximately US$ 3.2 million and EUR 615,000, respectively, and to pay 6% simple interest on those amounts beginning one month after the Final Award. *See* Friedman Decl. Ex. A (Final Award), ¶ 107(7).

---

[1] References to the "Friedman Declaration" or "Friedman Decl." are to the accompanying Declaration of Elliot Friedman, dated December 27, 2022.

4.Venezuela has not paid any of the amounts due under the Final Award. *See* Friedman Decl. ¶ 13. VUS therefore brings this action to recognize and enforce the Final Award against Venezuela pursuant to the FAA and the New York Convention.

## PARTIES

5.Petitioner Venezuela US SRL is a company organized and existing under the laws of Barbados, with its principal place of business at 1201 Lake Robbins Drive, The Woodlands, Texas, 77380. Petitioner is a wholly owned subsidiary of Occidental Petroleum Corporation, which is organized in Delaware and headquartered in Houston, Texas.

6.Respondent the Bolivarian Republic of Venezuela is a foreign state within the meaning of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1332, 1391(f), 1602–1611.

## JURISDICTION AND VENUE

7.This Court has subject matter jurisdiction over this petition to recognize and enforce a foreign arbitral award against a foreign sovereign pursuant to 28 U.S.C. § 1330(a), 28 U.S.C. § 1331, and 9 U.S.C. § 203.

8.Venezuela is not entitled to sovereign immunity because this is an action to recognize and enforce an arbitral award governed by the New York Convention, a treaty providing for the recognition and enforcement of arbitral awards to which the United States is a party. Accordingly, this action falls within the FSIA's exception for arbitral enforcement actions. *See* 28 U.S.C. § 1605(a)(6); *Process & Indus. Devs. Ltd. v. Fed. Republic of Nig.*, 27 F.4th 771, 776 (D.C. Cir. 2022).

9.Venezuela is also not entitled to immunity from jurisdiction because Venezuela impliedly waived its immunity from jurisdiction by signing the New York Convention. Accordingly, this action additionally falls within the FSIA's waiver exception. *See* 28 U.S.C.

§ 1605(a)(1); *Tatneft v. Ukraine*, 771 F. App'x 9, 9–10 (D.C. Cir. 2019) (per curiam); *Creighton Ltd. v. Gov't of the State of Qatar*, 181 F.3d 118, 123 (D.C. Cir. 1999); *Process & Indus. Devs. Ltd. v. Fed. Republic of Nig.*, 506 F. Supp. 3d 1, 6–11 (D.D.C. 2020), *aff'd on other grounds*, 27 F.4th 771 (D.C. Cir. 2022).

10. This Court may exercise personal jurisdiction over Venezuela pursuant to 28 U.S.C. § 1330(b), which provides that the United States District Courts have personal jurisdiction over a foreign State that—like Venezuela in this action—is not entitled to immunity, provided that service of process is effected in accordance with 28 U.S.C. § 1608. VUS intends to serve process in a timely manner on Venezuela pursuant to 28 U.S.C. § 1608(a), including, if required, through the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f)(4) and 9 U.S.C. § 204.

## THE DISPUTE AND THE FINAL AWARD

12. The underlying dispute arises from VUS's investment in Petroritupano S.A. ("Petroritupano"), a Venezuelan *empresa mixta*, or "mixed company," that holds rights to oil production in a specified area in Venezuela. *See* Friedman Decl. Ex. C (Partial Award), ¶¶ 72–91. Petroritupano has three shareholders: Corporación Venezolana del Petróleo, S.A. ("CVP") (owned by the Venezuelan state), with a 60% share; Petrobras Energía S.A. ("Petrobras") (at the relevant time a subsidiary of Brazil's state-controlled oil company), with a 22% share; and VUS, with an 18% share. *See id.* at ¶¶ 91, 180. From 2006 until 2009, Petroritupano was profitable: its net profits were US$ 146 million in 2006, US$ 260 million in 2007, US$ 341 million in 2008, and US$ 177 million in 2009. *See id.* at ¶ 108. As a result, Petroritupano's three shareholders

4

approved dividend distributions of US$ 245,328,710.39 for 2008 and US$ 81,731,835.00 for 2009. *See id.* at ¶¶ 109, 113. Given its shareholding, VUS was entitled to 18% of the declared dividends, for total dividends of US$ 58,870,898. *See* Friedman Decl. Ex. A (Final Award), ¶ 56.

13. VUS never received any of those dividends. Its co-owners, however, did: Petrobras received its dividend share in cash in 2011, on the eve of a visit by Venezuela's President Chávez to Brazil to discuss (among other things) cooperation in energy matters; and CVP also received the value of its dividends through certain offsets with its state-owned parent company. *See* Friedman Decl. Ex. C (Partial Award), ¶ 116.

14. On March 22, 2013, VUS filed for arbitration against Venezuela under the Treaty. *See* Friedman Decl. Ex. F (Notice of Arbitration). The Arbitration was conducted under the 1976 Arbitration Rules of the United Nations Commission on International Trade Law (the "UNCITRAL Rules"). *See* Friedman Decl. Ex. B (Interim Award), ¶ 13; Friedman Decl. Ex. E (UNCITRAL Rules). The Tribunal was constituted on November 13, 2013, and was composed of three arbitrators. *See* Friedman Decl. ¶ 7.[2] The Arbitration was seated in The Hague, Netherlands. *See id.*

15. The Arbitration was divided into three phases. The first phase was devoted to certain of Venezuela's jurisdictional objections, and included extensive briefing, a hearing in 2014, and the Tribunal's issuance of the Interim Award in 2016. *See* Friedman Decl. Ex. B (Interim Award), ¶¶ 28–39. In the Interim Award, the majority of the Tribunal (comprising

---

[2] The original Tribunal was composed of L. Yves Fortier (appointed by VUS), Gabriel Bottini (appointed by Venezuela), and H.E. Judge Peter Tomka (appointed as the presiding arbitrator pursuant to the agreement of the parties). *See* Friedman Decl. Ex. C (Partial Award), ¶¶ 5, 10–11. Following VUS's successful challenge of Mr. Bottini, Venezuela appointed Professor Marcelo Kohen as a substitute arbitrator on January 18, 2016. *See id.* at ¶¶ 41–44.

Judge Tomka and Mr. Fortier) rejected Venezuela's objection that it had not consented to arbitrate the dispute with VUS.  *See id.* at ¶ 132; Friedman Decl. ¶ 8.  Professor Kohen issued a dissenting opinion.  *See* Friedman Decl. ¶ 8 n.3.

16.     The second phase of the Arbitration addressed Venezuela's remaining objections to jurisdiction and the merits.  *See* Friedman Decl. ¶ 9.  After further extensive briefing and a hearing in 2017, the Tribunal issued the Partial Award in 2021.  *See* Friedman Decl. Ex. C (Partial Award), ¶¶ 40–71.  In the Partial Award, the Tribunal again held that it had jurisdiction over VUS's claims, and found that Venezuela had breached the Treaty by discriminating against VUS in the treatment of dividends for 2008 and 2009.  *See id.* at ¶¶ 215–24, 258.  Professor Kohen joined the Partial Award subject to an attached declaration.  *See* Friedman Decl. ¶ 9 n.4.

17.     Finally, in the third phase, the Tribunal determined the amount of compensation that Venezuela owed VUS as a result of Venezuela's breach of the Treaty.  The Tribunal received additional briefing from the parties on issues of causation, damages, and interest, and held a hearing in February 2022.  *See* Friedman Decl. Ex. A (Final Award), ¶¶ 11, 13–14, 19, 31; Friedman Decl. ¶ 10.  In the Final Award, the Tribunal unanimously held that Venezuela was liable to pay VUS compensation in the amount of US$ 58,870,898, the nominal value of VUS's unpaid dividends, plus pre-award interest of US$ 46,624,436 and post-award interest at the rate of twelve-month USD LIBOR plus 4%, with annual compounding of the accrued interest.  *See* Friedman Decl. Ex. A (Final Award), ¶¶ 107(1)–107(3).[3]

18.     Finally, the Tribunal ordered Venezuela to reimburse 70% of VUS's costs of arbitration and legal fees, amounting to EUR 615,056.47 and US$ 3,215,534.99, plus simple

---

[3] The Tribunal also ruled that if Petroritupano or CVP paid the amounts due under the Final Award to VUS within two months, then VUS would be precluded from seeking enforcement of those amounts.  *See* Friedman Decl. Ex. A (Final Award), ¶ 107(5).  Neither Petroritupano nor CVP has paid the amounts due under the Final Award.  *See* Friedman Decl. ¶ 13.

interest at a rate of 6% beginning one month following the date of the Final Award until the date of full payment. *See id.* at ¶¶ 106, 107(7).

## LEGAL BASIS FOR RELIEF

19. The New York Convention is an international treaty signed by more than 150 countries that is designed to facilitate and expedite the recognition and enforcement of foreign arbitral awards. To accomplish that goal, the Convention requires that "[e]ach Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon, under the conditions laid down in the following articles." Convention on the Recognition and Enforcement of Foreign Arbitral Awards art. III, June 10, 1958, 21 U.S.T. 2517. The United States is a party to the New York Convention and is bound by its terms. *See New York Arbitration Convention: Contracting States*, http://www.newyorkconvention.org/countries. Venezuela and the Netherlands are likewise both parties to the Convention. *Id.*

20. Consistent with the United States' obligations under the New York Convention, recognition and enforcement proceedings are a "summary procedure." *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 940 (D.C. Cir. 2007) (citation omitted). "[T]he showing required to avoid summary confirmation is high" and "rests with the party resisting confirmation." *Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp. 2d 12, 20 (D.D.C. 2011) (citations omitted).

21. The United States has implemented the New York Convention through Chapter 2 of the FAA. The FAA provides that "[t]he Convention . . . shall be enforced in United States courts in accordance with this chapter." 9 U.S.C. § 201. It further provides:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming

7

>the award as against any other party to the arbitration. The court *shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207 (emphasis added). Recognition and enforcement of an award is thus mandatory unless one of the Convention's narrow grounds for non-enforcement applies. *See TermoRio*, 487 F.3d at 935 ("[W]hen an action for enforcement is brought in a foreign state, the state may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention." (citation omitted)).

**A.      The Final Award Is Within the Scope of the New York Convention**

22.     Under the FAA, "[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the [New York] Convention" unless it arises out of a "relationship which is entirely between citizens of the United States." 9 U.S.C. § 202. Each of those requirements is met. The Final Award arises out of a commercial relationship—VUS's investments in Venezuela's energy sector and rights as a shareholder in Petroritupano, *see* Friedman Decl. Ex. C (Partial Award), ¶¶ 72–122, 126—and Venezuela is not a citizen of the United States. This Court routinely enforces arbitral awards under the New York Convention when they, like the Final Award, were rendered under bilateral investment treaties. *See, e.g.*, *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, 300 F. Supp. 3d 137, 151 (D.D.C. 2018); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 244 F. Supp. 3d 100, 123 (D.D.C. 2017), *aff'd*, 760 F. App'x 1 (D.C. Cir. 2019); *Gold Reserve Inc. v. Bolivarian Republic of Venezuela*, 146 F. Supp. 3d 112, 137 (D.D.C. 2015); *Chevron Corp. v. Republic of Ecuador*, 949 F. Supp. 2d 57, 73 (D.D.C. 2013), *aff'd*, 795 F.3d 200 (D.C. Cir. 2015).

23. The New York Convention also requires that a party seeking to recognize and enforce a foreign arbitral award submit (*i*) a duly certified copy of the award and (*ii*) the arbitration agreement. Convention on the Recognition and Enforcement of Foreign Arbitral Awards art. IV(1), June 10, 1958, 21 U.S.T. 2517. VUS has submitted a duly certified copy of the Final Award as Exhibit A to the Friedman Declaration. *See* Friedman Decl. Ex. A (Final Award); Friedman Decl. ¶ 3. The agreement to arbitrate consists of Venezuela's offer to arbitrate, which is found at Article 8 of the Treaty, *see* Friedman Decl. Ex. D (Treaty), art. 8; Friedman Decl. Ex. B (Interim Award), ¶¶ 107–11, 127–30, and VUS's acceptance of that offer, which is found in its Notice of Arbitration, *see* Friedman Decl. Ex. F (Notice of Arbitration), ¶¶ 21–26; Friedman Decl. Ex. B (Interim Award), ¶ 3.

**B. There Is No Basis under the New York Convention to Deny Recognition and Enforcement**

24. Article V of the New York Convention sets out an exclusive list of seven grounds on which a court may deny recognition and enforcement of an award. *See Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) ("[T]he Convention is 'clear' that a court 'may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention.'" (citation omitted)). None of these grounds applies here.

25. Article V(1)(a) permits denial of recognition and enforcement where one of the parties to the arbitration was "under some incapacity" or where the agreement to arbitrate was "not valid under the law to which the parties have subjected it." That provision does not apply here. Venezuela has never claimed incapacity (nor could it) and, as the Tribunal found, Venezuela provided its "unconditional consent to the submission of disputes" with Barbadian investors, such as VUS, pursuant to the Treaty. *See* Friedman Decl. Ex. D (Treaty), art. 8(4);

9

Friedman Decl. Ex. B (Interim Award), ¶¶ 109, 127–30; Friedman Decl. Ex. C (Partial Award), ¶ 258(1).

26. Article V(1)(b) of the Convention permits denial of recognition and enforcement where one of the parties to the arbitration "was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." That provision does not apply either. Venezuela participated fully in the Arbitration, appointing an arbitrator (and appointing a replacement arbitrator when VUS successfully challenged Venezuela's first appointee), submitting eight briefs totaling hundreds of pages on jurisdiction, the merits, and quantum, participating in hearings on each of those topics, and submitting a number of other procedural requests. *See* Friedman Decl. Ex. A (Final Award), ¶¶ 9–33; Friedman Decl. Ex. B (Interim Award), ¶¶ 9–44; Friedman Decl. Ex. C (Partial Award), ¶¶ 9–70; Friedman Decl. ¶¶ 7–10.

27. Article V(1)(c) of the Convention permits denial of recognition and enforcement where the award "deals with a difference not contemplated by or not falling within the terms of the submission to arbitration" or "contains decisions on matters beyond the scope of the submission to arbitration." That provision also does not apply. The Treaty's dispute resolution clause covers all "[d]isputes between one Contracting Party and a national or company of the other Contracting Party concerning an obligation of the former under this Agreement in relation to an investment of the latter." Friedman Decl. Ex. D (Treaty), art. 8(1). The Final Award resolves VUS's claims concerning Venezuela's obligations under the Treaty in relation to VUS's investment in Petroritupano. *See* Friedman Decl. Ex. A (Final Award), ¶ 3. It is therefore squarely within the dispute submitted to arbitration.

28.     Article V(1)(d) of the Convention permits denial of recognition and enforcement where "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties."  This provision similarly does not apply because the Tribunal was constituted in accordance with the Treaty and the UNCITRAL Rules, as agreed by the parties and with Venezuela's direct participation.  *See* Friedman Decl. Ex. B (Interim Award), ¶¶ 5–11, 44.

29.     Article V(1)(e) of the Convention permits denial of recognition and enforcement where "[t]he award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made."  The Final Award is final and binding on VUS and Venezuela, and has not been set aside by the Dutch courts, which are the competent authority of the country in which the Final Award was made.  *See* Friedman Decl. ¶ 7 (noting that the Arbitration was seated in The Hague, Netherlands).  This provision therefore does not apply.

30.     Article V(2)(a) of the Convention requires a court to deny recognition and enforcement where "[t]he subject matter of the difference is not capable of settlement by arbitration under the law of th[e] country" where enforcement is sought.  This dispute would have been arbitrable under U.S. law: it is a commercial dispute and, moreover, the United States is a party to any number of bilateral investment treaties that, similar to the Treaty, provide protections to foreign investors against discriminatory acts that harm investments and consent to arbitrate disputes following breaches of those protections.  *See, e.g.*, Treaty between the United States of America and the Argentine Republic Concerning the Reciprocal Encouragement and Protection of Investment arts. II(2)(b), VII, Nov. 14, 1991, T.I.A.S. 94-1020.

31. Finally, Article V(2)(b) of the Convention requires a court to deny recognition and enforcement where "recognition or enforcement of the award would be contrary to . . . public policy." That exception is "construed narrowly" and "applie[s] only where enforcement would violate the United States' most basic notions of morality and justice." *Belize Bank Ltd. v. Gov't of Belize*, 852 F.3d 1107, 1111 (D.C. Cir. 2017) (alteration omitted). No such circumstance is present here, and so this provision does not apply.

32. Because the Final Award "fall[s] under the [New York] Convention," was made within the last three years, and is not subject to any of the grounds for denial of recognition and enforcement in Article V of the Convention, the Court must recognize and enforce the Final Award in its entirety against Venezuela. *See* 9 U.S.C. § 207.

## CAUSE OF ACTION AND REQUEST FOR RELIEF

33. Petitioner repeats and re-alleges the allegations in paragraphs 1 through 32 as if set forth fully herein.

34. The Final Award falls under the New York Convention.

35. The Final Award is the result of an arbitration seated in the Netherlands between VUS and Venezuela, with both parties consenting to the dispute resolution mechanism set forth in the Treaty. The Final Award was made within the past three years, on November 4, 2022.

36. As required by Article IV of the New York Convention, the Petition attaches (*i*) a certified copy of the Final Award, Friedman Decl. Ex. A (Final Award), and (*ii*) the arbitration agreement in the Treaty, Friedman Decl. Ex. D (Treaty), art. 8, and VUS's Notice of Arbitration, *see* Friedman Decl. Ex. F (Notice of Arbitration), ¶¶ 21–26.

37. Therefore, under the FAA, the Court shall recognize and enforce the Final Award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the Final Award specified in the New York Convention. *See* 9 U.S.C. § 207. None of the New York

Convention grounds for denying or deferring recognition and enforcement of an award apply in this case.

38. For the foregoing reasons, VUS is entitled to an order (*i*) recognizing and enforcing the Final Award pursuant to the New York Convention, and (*ii*) entering judgment in VUS's favor in the amount specified in the Final Award.

WHEREFORE, Petitioner VUS respectfully requests that the Court enter an order:

(a) recognizing the Final Award against Venezuela;

(b) entering judgment against Venezuela and in favor of VUS, ordering Venezuela to pay VUS:

    (i) US$ 58,870,898 in nominal compensation;

    (ii) US$ 46,624,436 in pre-award interest;

    (iii) US$ 3,215,534.99 in costs and legal expenses incurred by VUS;

    (iv) EUR 615,056.47 for reimbursement of VUS's share of the Tribunal's fees and expenses;

(c) awarding VUS prejudgment interest on the sums in (b)(i) and (b)(ii) above at a rate corresponding to the twelve-month USD LIBOR plus a margin of four percent (4%) from the date of the Final Award, November 4, 2022, to the date of entry of this Court's judgment, with annual compounding of the accrued interest;[4]

(d) awarding VUS prejudgment interest on the costs and legal expenses and reimbursement of Tribunal fees and expenses in (b)(iii) and (b)(iv) above at a rate

---

[4] As of the date of this Petition, prejudgment interest on (b)(i) and (b)(2) amounts to US$ 360,399.37. *See* Friedman Decl. ¶ 12. VUS would be pleased to provide the Court with updated calculations of prejudgment interest at a date closer to the entry of judgment.

of 6% from one month following the date of the Final Award, December 5, 2022, to the date of entry of this Court's judgment;[5]

(e) awarding VUS post-judgment interest at the statutory rate set forth in 28 U.S.C. § 1961 from the date of entry of judgment to the date the judgment is satisfied in full;

(f) awarding VUS such other fees and costs as may be recoverable in this proceeding; and

(g) granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
December 27, 2022

Respectfully submitted,

By: /s/ Elliot Friedman
Elliot Friedman, D.C. Bar No. NY0106
elliot.friedman@freshfields.com
Paige von Mehren (*pro hac vice* forthcoming)
paige.vonmehren@freshfields.com
FRESHFIELDS BRUCKHAUS DERINGER US LLP
601 Lexington Avenue, 31st Floor
New York, New York 10022
Telephone: (212) 277-4000
Facsimile: (212) 277-4001

*Attorneys for Petitioner Venezuela US SRL*

---

[5] As of the date of this Petition, prejudgment interest on (b)(iii) and (b)(iv) amounts to US$ 11,628.78 and EUR 2,224.31. *See* Friedman Decl. ¶ 12. VUS would be pleased to provide the Court with updated calculations of prejudgment interest at a date closer to the entry of judgment.